<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW MARTINEZ, | |
|                 Plaintiff, | Civ. No.  08-0680 (DRD) |
| v. | <u>**O P I N I O N**</u> |
| CARDINAL HEALTH PARTNERS, LLC, | |
|                 Defendant. | |

BEGELMAN & ORLOW, PC
411 Route 70 East, Suite 245
Cherry Hill, NJ  08034
by:  Marc M. Orlow, Esq.
     Ross Begelman, Esq.

    *Attorneys for Plaintiff*

DLA PIPER US LLP
1650 Market Street, Suite 4900
One Liberty Place
Philadelphia, PA  19103
by: Joseph Kernen, Esq.
    Kristin M. Barrett, Esq.

    *Attorneys for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

Cardinal Health, Inc., ("Cardinal"), improperly named in this action as Cardinal Health Partners, LLC, seeks reconsideration, pursuant to Local Civil Rule 7.1, of this Court's April 21, 2008, Order and Opinion which denied Cardinal's motion to dismiss Plaintiff's Amended Complaint. In his Amended Complaint, Plaintiff, Andrew Martinez, asserts common law wrongful termination under Pierce v. Ortho Pharmaceutical Corporation, 84 N.J. 58 (1980). In support of its motion for reconsideration, Cardinal argues that this Court erred in concluding that Martinez has pled the necessary elements of a Pierce claim. Because the April 21, 2008, Opinion was not based on a clear error of law, Cardinal's motion for reconsideration will be denied.

## I. BACKGROUND

Background to this case is set forth in the April 21, 2008 Opinion. Only the details necessary for this decision will be discussed here.

On December 14, 2007, Martinez filed a complaint in the Superior Court of New Jersey. The Complaint alleged one cause of action under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 et seq.. On February 5, 2008, Cardinal removed the case from the Superior Court to this Court, pursuant to 28 U.S.C. § 1441, because the parties to the action are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

On February 13, 2008, Cardinal filed a motion to dismiss, alleging that the statute of limitations had run on Martinez's CEPA claim, and, therefore, Martinez had failed to state a claim on which relief could be granted. Recognizing that his CEPA claim was time barred, on February 21, 2008, Martinez filed a motion to amend his complaint. The Court granted Cardinal's motion to dismiss and Martinez's motion to amend on March 5, 2008. Martinez then

filed an amended complaint on March 10, 2008.

Martinez's amended complaint alleged wrongful termination under <u>Pierce v. Ortho Pharmeceutical Corporation</u>, 84 N.J. 58 (1980).  In support of his claim, Martinez stated that Cardinal, which contracted with Pfizer, Inc. to provide quality control for sales events, improperly terminated him for refusing to participate in actions that he believed would have violated Medicaid rules; for attempting to prevent actions that he believed would violate regulatory rules of compliance; and for informing his supervisors at Cardinal Health of pressure from Pfizer representatives to disregard federal and state regulations.  Cardinal then filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Martinez failed to meet the common law wrongful termination standard because he never notified a government agency.

In an opinion dated April 21, 2008, the Court denied Cardinal's motion to dismiss.  The Court determined that if Martinez's allegations--that he was discharged for complaining to supervisors of being pressured to violate federal and state regulations and because he refused to act in such a way as to violate or condone the violation of those regulations--are true, Martinez has stated a claim for wrongful termination under <u>Pierce</u>.  In reaching this conclusion, the court found that external notification is not an element of a <u>Pierce</u> wrongful termination claim.  This finding, which Cardinal argues was based on an erroneous reading of the case law, is the basis for Cardinal's motion for reconsideration.

## II.  DISCUSSION

**A.  Motion for Reconsideration Standard**

Local Civil Rule 7.1(*i*) governs motions for reconsideration.  A motion for

reconsideration is "an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, the standard for reconsideration is high: "the party seeking reconsideration [must] show[] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Because reconsideration of a judgment after its entry is an extraordinary remedy, it should only be granted sparingly. Yurecko v. PATH Corp., 279 F. Supp. 2d 606, 608 (D.N.J. 2003).

**B. Reconsideration of Wrongful Discharge**

Cardinal relies on the third ground for reconsideration in bringing this motion. Cardinal contends the Court misinterpreted the Pierce line of cases and therefore, must reconsider its denial of the motion to dismiss in order to correct a clear error of law. Cardinal offers several arguments in support of its motion for reconsideration. First, Cardinal asserts that its reliance on House v. Carter-Wallace Inc., 232 N.J. Super. 42, 45 (App. Div. 1989) was misstated by the Court and reasserts that Martinez's internal reporting is insufficient to state a claim under Pierce. Second, Cardinal argues that Kalman v. Grand Union Company, 183 N.J. Super. 153 (App. Div. 1982) establishes that external reporting to a government agency is an essential element of a Pierce cause of action. Finally, Cardinal contends that the Court erred in relying on DeWelt v. Measurment Specialties Inc., 2007 U.S. Dist. LEXIS 11373 (D.N.J. Feb. 6, 2006) and Badrinauth v. Metlife Corp., 2006 U.S. Dist. LEXIS 4790 (D.N.J. Feb. 6, 2006) because they both

4

misinterpreted earlier case law and therefore, are not persuasive authority.[1]  A review of these cases, however, shows that no error of law was committed and as such, Cardinal's motion for reconsideration will be denied.

**1. External Reporting Requirement**

Cardinal claims that the Court misinterpreted House.  In its moving papers, Cardinal cites the following statement, in an attempt to show that Martinez's internal reporting is insufficient to support a Pierce claim: "Therefore, the mere voicing of opposition to corporate policy within a corporation provides an insufficient foundation for assertion of a Pierce claim." House, 232 N.J. Super. at 49.

Cardinal argues that this statement establishes the need for external reporting.  Cardinal, however, takes this statement out of context.  When read in context, it is clear House held that merely reporting internally a difference of opinion regarding corporate policy is insufficient to state a Pierce claim.  House, 232 N.J. Super. at 49.  Thus, House only describes what is insufficient for a Pierce claim; it does not explain what would constitute a Pierce claim.

While a complaint to a government agency tends to show that an employee took action beyond an internal complaint, there is no requirement that such an action be taken in order for a plaintiff to state a claim for wrongful discharge.  Pierce, 84 N.J. at 71-72.  According to Pierce, any action, including a refusal to act, may be sufficient to state a claim:

---

[1]Cardinal also argues that permitting a common law wrongful termination claim based only on internal notification would infringe on the legislature's one-year statute of limitations for CEPA claims because without external notification, Martinez's common law wrongful termination claim is nothing more than a CEPA claim.  As the discussion below explains further, this argument is unfounded because Martinez alleges internal notification accompanied by a refusal to act as is required by Pierce.  84 N.J. at 71-72.

> Employees who are professionals owe a special duty to abide . . . by federal and state law. That duty may oblige them to decline to perform acts required by their employers. However, an employee should not have the right to prevent his or her employer from pursuing its business because the employee perceives that a particular business decision violates the employee's personal morals, as distinguished from the recognized code of ethics of the employee's profession.

Id.

Further, the court in House found that the plaintiff's actions were limited to merely expressing opposition; "he did not take, or threaten to take, effective action." House, 232 N.J. Super. at 51. The court found that his disagreement with the defendant's corporate policy was not enough to assert a Pierce claim because it found that the plaintiff was not qualified to determine whether a product manufactured by the defendants was contaminated. Id. at 52. Therefore, the court concluded that merely disagreeing with corporate policy based on one's personal morals was not enough to establish a Pierce claim. The court suggested, however, that had the plaintiff taken additional, reasonable action in addition to voicing his opposition, he may have had a valid wrongful termination claim. Id. Thus, reading the opinion as a whole shows that House only establishes that a disagreement between employer and employee regarding company policy is insufficient to state a Pierce claim; it does not establish an external reporting requirement.

The situation here, however, is much different from that of the plaintiff in House. First, unlike the plaintiff in House, Martinez's reporting was not motivated by his personal values or conscience, nor did he merely disagree with a company policy. Rather, Martinez reported a possible violation of federal and state regulations. Second, unlike the plaintiff in House, who had no credentials for determining the safety of the defendant's product, Martinez's responsibilities

as Program Coordinator included ensuring all Pfizer sales events were planned and executed properly and that records were kept in accordance with all relevant Medicaid Rules.  Finally, the plaintiff in House merely voiced his concern to individuals within his company while Martinez's complaints to supervisors were accompanied by his refusal to participate in actions that would violate regulatory rules of compliance and Medicaid Rules.  Therefore, House is not persuasive authority for dismissal of Martinez's complaint.

### 2. Kalman v. Grand Union Company

Cardinal, in support of its argument that Martinez's complaint should be dismissed for lack of external reporting, next directs the Court's attention to Kalman v. Grand Union Company, 183 N.J. Super. 153 (App. Div. 1982).  In Kalman, a pharmacist alleged wrongful discharge under Pierce after he was terminated for refusing to close the pharmacy while the rest of the store remained open.  Id. At 156.  The pharmacist had called the Board of Pharmacy to confirm that closing the pharmacy while the store was open would be a violation of the rules of the Board of Pharmacy.  Id. at 155-156.

Cardinal argues that the Court erred because it considered the pharmacist's refusal to close the pharmacy in violation of the rules of the Board of Pharmacy, but it did not consider the fact that the pharmacist reported his supervisor's attempt to flout state regulations.  This argument is unpersuasive because the court in Kalman did not focus on whether a complaint was made to the Board of Pharmacy.  Rather, the issue in Kalman was whether the pharmacist's discharge for abiding by the rules of the Board of Pharmacy violated a clear mandate of public

policy.[2]  Kalman, 183 N.J. Super. at 157.  Whether Martinez was discharged in violation of public policy is not at issue here.[3]

Furthermore, it is unclear from the Kalman decision whether or not the pharmacist actually reported the violation to the Board of Pharmacy, or whether he called the Board in order to obtain information about the Board's rules.  Cardinal points to the following statement in Kalman as evidence of the reporting: "Thus plaintiff is correct that he was vindicating a clear mandate of public policy when he **reported** defendant's plan to the Board of Pharmacy."  Kalman, 183 N.J. Super. at 158 (emphasis added).  However, in the statement of the facts, the court states: "plaintiff telephoned the Board of Pharmacy and learned that, contrary to [plaintiff's supervisor]'s representation, the pharmacy was required to be open as long as the store was open."  Kalman, 183 N.J. Super. at 155-156.  As such, it is not clear from the opinion whether the pharmacist actually reported the violation to the Board of Pharmacy.  Regardless, the Kalman court did not determine that reporting to an outside body was an essential element of a Pierce claim.  Indeed, the court relied on the Pierce standard that employees have a duty to abide by federal and state laws or by the codes of ethics of their professions which may oblige them to decline to perform acts required by their employers.  Kalman, 183 N.J. Super. at 156.

Apart from Cardinal's assertions to the contrary, Martinez's complaint describes a similar situation to the one in Kalman.  Just as the pharmacist in Kalman was pressured by his supervisor

---

[2] An employer's right to terminate an at will employee carries with it a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a clear mandate of public policy.  Pierce, 84 N.J. at 72.

[3] The Court concluded in its April 21, 2008 Opinion that discharging an employee who is trying to uphold compliance with regulatory rules is a violation of public policy.

to close the pharmacy in violation of Board of Pharmacy rules, Martinez has alleged that he was pressured by Pfizer sales representatives to violate compliance regulations. Further, the pharmacist in Kalman refused to condone his supervisor's actions by calling the Board of Pharmacy. Similarly, Martinez refused to condone the actions of the Pfizer sales representatives by alerting his supervisor of their actions and refusing to act in violation of the Medicaid compliance regulations.

### 3. District of New Jersey Cases

Finally, Cardinal also contends that DeWelt v. Measurment Specialties Inc., 2007 U.S. Dist. LEXIS 11373, at *20 (D.N.J. Feb. 15, 2007) (finding an employee's refusal to sign company financial statements was sufficient effective action to allow a Pierce claim to proceed) and Badrinauth v. Metlife Corp., 2006 U.S. Dist. LEXIS 4790, at *6 (D.N.J. Feb. 6, 2006) (allowing a Pierce cause of action where employee threatened to expose violations of labor laws but did not make an actual complaint to government agency) misinterpret House and Kalman and that this Court erred in relying on their misinterpretation. However, as stated above, House did not create an additional element for common law wrongful termination causes of action and Kalman was unconcerned with whether there was external reporting to a government agency.

Since neither House nor Kalman mandates external reporting to a government agency, the Court did not err in relying on the DeWelt or Badrinauth decisions, which determined that outside reporting is not necessary if other effective action is taken in conjunction with internal reporting. Thus, the DeWelt and Badrinauth decisions are persuasive and consistent with

9

previous case law.[4]

### III.  CONCLUSION

      For the reasons set forth above, Cardinal's motion for reconsideration of the April 21, 2008, Order and Opinion will be denied.  None of the arguments advanced by Cardinal are sufficient under the stringent standard of Local Civil Rule 7.1 as no error of law was committed in the Court's previous discussion of the <u>Pierce</u> line of cases.  The Court will enter an order implementing this opinion.

                              /s/ Dickinson R. Debevoise

                              DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 25, 2008

---

[4]<u>Young v. Schering Corporation</u>, 141 N.J. 16 (1995) is the only opinion that appears to state a bright line rule requiring actual notification to a governmental body.  However, this Court determined in its April 21, 2008, Opinion that the statement is in dicta and does not accurately represent the Supreme Court of New Jersey's holding in <u>Pierce</u>.